UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MOSES WILSON,

                              Plaintiff,

    vs.

                                                            9:03-CV-500

RAFAEL RIVERA,                                     (J. Kahn)
Parole Officer,

                              Defendant.
_____

APPEARANCES                            OF COUNSEL

MOSES WILSON
Plaintiff pro se

ELIOT SPITZER                          MARIA MORAN
Attorney General of the            Asst. Attorney General
State of New York

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

    This matter has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

    In this civil rights complaint, plaintiff alleges that defendant Rivera placed handcuffs on plaintiff that were too tight, causing plaintiff permanent injury. Plaintiff seeks substantial monetary relief.

    Presently before the court is defendant's motion for summary judgment pursuant to FED. R. CIV. P. 56. (Dkt. No. 32). Plaintiff has responded in opposition to

the motion. (Dkt. No. 34). For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint.

## DISCUSSION

**1.     <u>Summary Judgment</u>**

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*. However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id*. *See also Burt Rigid Box v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002)(citations omitted). However, only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment. *Salahuddin v. Coughlin*, 674 F. Supp. 1048, 1052 (S.D.N.Y. 1987)(citation omitted).

**2.   Facts**

Defendant Rivera was plaintiff's parole officer. Plaintiff alleges that on November 12, 2002, he appeared in defendant Rivera's office. During that appearance, defendant Rivera arrested plaintiff for a parole violation. Plaintiff alleges that defendant Rivera placed handcuffs on plaintiff. Plaintiff claims that the handcuffs were too tight, but that defendant Rivera refused to loosen them. As a result of spending time in the tight handcuffs, plaintiff alleges that he has suffered permanent damage to his arm. Plaintiff claims that defendant Rivera engaged in this conduct because he did not like the plaintiff.

Defendant has submitted three affidavits, including his own. Defendant Rivera states that he has been a Senior Parole Officer with the New York State Division of Parole since November of 2003, but has been with the Division of Parole for fourteen years. Rivera Aff. ¶ 1 (attached to Dkt. No. 32). Plaintiff was paroled on November 2, 2002, and was assigned to defendant Rivera's caseload. *Id.* ¶ 2. On November 12, 2002, Senior Parole Officer Gerald E. Donahue issued an arrest warrant for plaintiff based on alleged parole violations. *Id.* ¶ 3 & Ex. A.

On the same day the warrant was issued, plaintiff appeared in defendant Rivera's office at approximately 3:41 p.m. for his weekly reporting appointment. *Id.* ¶ 4. Shortly after plaintiff's arrival, defendant Rivera placed plaintiff under arrest pursuant to the warrant that had been issued for him. *Id.* The time of plaintiff's arrival

3

is documented in defendant Rivera's "Chrono Notes", submitted as Exhibit B to the affidavit. Defendant Rivera states that as a result of the arrest, defendant placed handcuffs on plaintiff. *Id.* Defendant Rivera explains the procedure he used for handcuffing plaintiff. *Id.* Defendant Rivera states that he asked plaintiff to place his hands on the wall, then took one of plaintiff's hands and placed the handcuff on his wrist. *Id.* Defendant Rivera then removed plaintiff's other arm from the wall and secured the second handcuff to plaintiff's wrist. *Id.*

Defendant Rivera states that the handcuffs that were placed on plaintiff's wrists were "standard issue" and consisted of two steel cuffs, connected with a two inch chain, a picture of which has been included as Exhibit C to the affidavit. *Id.* ¶ 5. After defendant Rivera placed the handcuffs on plaintiff, plaintiff was taken to another room to wait for transportation to the Onondaga County Justice Center. *Id.* ¶ 6. The room in which plaintiff was place contained a bench with shackles attached to it. *Id.* & Ex. D (photograph of bench). The shackles consist of a chain that is twelve to fifteen inches long with a handcuff at the end of the chain. *Id.* Defendant Rivera states that the individual is seated on the bench, and one handcuff at the end of the chain is secured to ***the two inch chain that separates the handcuffs*** that the individual is already wearing. *Id.* Defendant Rivera states that he did ***not*** place one shackle from the bench on each of plaintiff's wrists, so that he was wearing two sets of handcuffs. *Id.* Defendant Rivera also states that plaintiff was escorted to the Justice Center by Parole

4

Officers Knapp and Nicotra at approximately 4:00 p.m., only twenty minutes after he arrived at Rivera's office. *Id.* ¶ 7.

Defendant Rivera states that plaintiff never complained to him that the handcuffs were too tight or that he wanted defendant Rivera to loosen them for any reason. *Id.* ¶ 8. Defendant Rivera has also submitted the affidavit of Parole Officer Thomas Knapp. Officer Knapp states that at approximately 4:00 p.m. on November 12, 2002, he and Parole Officer Nicotra escorted plaintiff from the Division of Parole Office at 333 East Washington Street in Syracuse, New York to the Onondaga County Justice Center at State Street in the City of Syracuse. Knapp Aff. ¶ 4. The ride took approximately five minutes. *Id.*

Officers Knapp and Nicotra waited with plaintiff until his reception at the Justice Center was completed, a total of one and one half hours. Knapp Aff. ¶ 5. The officer who made the copy of the videotape of plaintiff's booking certified that the tape was made from the original video recording of the booking room at the Justice Center from 5:47 p.m. until 5:59 p.m. on November 12, 2002.[1] Defendant's Ex. 2. Near the end of the booking process the officers were asked how long they had to wait. Defendant's Ex. 1. Officer Knapp looked at his watch and stated that they

---

[1] Although it appears that Exhibit 1 itself had the time of the booking at the bottom of the screen, it is difficult to discern from the tape exactly what the time is. However, the certification indicates that the tape was made from the original booking tape for the time 17:47 (5:47 p.m.) to 17:59 (5:59 p.m.). Defendant's Ex. 2.

5

waited an hour and one half. *Id.* Officer Knapp also states that during the entire time that he was with plaintiff on November 12, 2002, plaintiff ***never complained that he had been handcuffed too tightly by defendant Rivera or that plaintiff was in any pain***. *Id.* ¶ 6.

Defendant has also submitted the affidavit of Virginia Ruggireo, a Registered Nurse at the Justice Center who was on duty on November 13, 2002. Ruggireo Aff. ¶¶ 1-2. At 4:05 a.m. on November 13, 2002, Nurse Ruggireo examined plaintiff for purposes of the medical screening required for inmates received at the Justice Center. *Id.* ¶ 2. Nurse Ruggireo's examination is documented as Exhibits A and B to her affidavit.

The only injury identified by plaintiff during the examination was a tooth abscess, for which he was already taking penicillin and Motrin. *Id.* ¶ 3 & Ex. A at 1, 2, 4. Nurse Ruggireo noted the tooth abscess in the "Problem Identified" section of the assessment form, and indicated that no treatment was given, but that plaintiff should be seen "during the nurse practitioner sick call." *Id.* Nurse Ruggireo stated that if plaintiff had complained of arm, wrist, or shoulder pain due to the handcuffs, the nurse would have noted this complaint in the appropriate section of the screening form. *Id.* ¶ 4. Nurse Ruggireo answered "no" to the question of whether there were any visible signs of illness or symptoms requiring immediate assistance. *Id.* Nurse Ruggireo also completed the Booking Process Checklist, indicating that plaintiff was "OK" for

6

reception. *Id.* ¶ 5 & Ex. B.  On the Booking Process Checklist, Nurse Ruggireo specifically noted that plaintiff was not injured. Ex. B at p.1.

On April 21, 2004 plaintiff was deposed by defense counsel, and relevant portions of the deposition transcript have been included as Defendant's Ex. 3.[2] Plaintiff testified that he usually reported to his parole officer on Tuesdays, and on November 12, 2000, he arrived at defendant Rivera's office at two or three o'clock in the afternoon. Defendant's Ex. 3 (Ex. 3) at 2-3; Deposition Transcript (T) at 17-18. Plaintiff states that he was called into defendant Rivera's office, that he and Rivera had a short discussion, and then defendant Rivera told plaintiff that he had violated parole, and proceeded to take plaintiff into custody by placing handcuffs on plaintiff. Ex. 3 at 4-5; (T. at 19-20).

Plaintiff stated that defendant Rivera told plaintiff to stand up against the wall, took one hand and placed it behind plaintiff's back. Ex. 3 at 6; (T. at 21).  When plaintiff's hand was down behind his back, defendant Rivera placed one handcuff on plaintiff's wrist, then took the other hand, placed it behind plaintiff's back, and placed the second handcuff on plaintiff's wrist. *Id.* Plaintiff then stated that he was taken into another room where there was a bench with handcuffs attached to the bench, and

---

[2] The transcript has page numbers in the top right hand corner of the pages, however, because defense counsel did not include the entire transcript, the numbers at the top of the pages are not always consecutive.  Defense counsel has also numbered the pages of the exhibit in the bottom right hand corner of the page.  These numbers are consecutive.  The court will refer to both sets of numbers for clarity.

7

plaintiff testified that defendant Rivera placed the bench handcuffs on plaintiff, and that they were placed above the handcuffs that he already was wearing. Ex. 3 at 7-9; (T. at 25, 26-27).

Plaintiff testified that he told Rivera that the "one on the right" was tight, and that Rivera told plaintiff that he would be back to loosen them. Ex. 3 at 9; (T. at 27). However, plaintiff testified that he sat in the room for "three hours", but no one came to check on him until it was time to leave. *Id*. Plaintiff did admit that the initial handcuffs were placed on him at "three something" or "three, four o'clock." Ex. 3 at 9-10; (T. at 27-28). Plaintiff stated that he spent ten minutes in defendant Rivera's office prior to being taken into the second room, but stated that he did not leave that room until "after six o'clock." Ex. 3 at 10; (T. at 28). Plaintiff testified that when defendant Rivera came back into the room, he asked plaintiff to stand up in order to take the bench handcuffs off. *Id*. Plaintiff stated that he could not come to a full standing position because of the length of the chain, so plaintiff was "half standing" when defendant Rivera took the handcuffs off. Ex. 3 at 10-11; (T. at 28-29).

Two officers took plaintiff to the Justice Center. Ex. 3 at 11; (T. at 29). The original handcuffs that defendant Rivera placed on plaintiff remained on him until they were removed at the Justice Center after reception. Ex. 3 at 12; (T. at 30). Plaintiff testified that when the sheriff took the handcuffs off plaintiff, the sheriff asked plaintiff what was wrong with his arm. *Id*. Plaintiff stated that his arm was

8

swollen, and he was sent to the nurse. *Id*.

Plaintiff also testified that for the three hours that he was in the second room, his arm was in pain, and he did not move because he knew that it would cause him more pain. Ex. 3 at 13; (T. at 31). Plaintiff then added that during this time, he was "hollering" out the door for defendant Rivera to come back and loosen the handcuffs, but no one came to help him. *Id*. Plaintiff stated that the handcuffs that were initially placed on plaintiff by Rivera were not tight. They were "normal". *Id*. Rather, it was the handcuffs attached to the bench that defendant Rivera allegedly "clamped" on plaintiff's wrists, causing his right arm pain. Ex. 3 at 13-14; (T. at 31-32).

Plaintiff also testified that once he arrived at the Justice Center, he waited approximately *two hours* to be "booked" because there were a lot of people waiting. Ex. 3 at 17; (T. at 36). Plaintiff also stated that the officers who brought him to the Justice Center also stayed and waited for plaintiff's booking. *Id*. Plaintiff remained in the original handcuffs the entire time that he was waiting for the booking process to start. *Id*.

Plaintiff also testified that when the nurse at the Justice Center examined him, plaintiff told her about his arm, and she ordered x-rays. Ex. 3 at 18; (T. at 45). Plaintiff then stated that the nurse gave him an "antibiotic" for pain. Ex. 3 at 18-19; (T. at 45-46). Then plaintiff stated that the pill may have been Tylenol. Ex. 3 at 19; (T. at 46). Although plaintiff stated that at the time of the deposition, the doctor had

9

removed any "medical restrictions," plaintiff described many activities that he could no longer perform allegedly as the result of the handcuff injury. Ex. 3 at 20-23; (T. at 63-65).

3. **Excessive Force**

The court must first determine what constitutional amendment protects the plaintiff in this case. The Supreme Court made it clear in *Graham v. Connor*, 490 U.S. 386, 395 (1989), that all claims that law enforcement officers used excessive force during an arrest, investigatory stop, or other seizure of a free citizen, must be analyzed under the Fourth Amendment. In *Graham*, the Court specifically did not resolve the question of whether the Fourth Amendment continues to protect pretrial detainees whose detention has extended beyond the point that arrest ends and pretrial detention begins. *Id.*

Subsequently, courts have distinguished between individuals who have been arrested, but have not been arraigned or formally charged and those who are post-arraignment pretrial detainees. *See Ali v. Szabo*, 81 F. Supp. 2d 447, 454 (S.D.N.Y. 1999), *adopted* Jan. 11, 2000. In *Blake v. Base*, the court held that the Fourth Amendment continues to protect individuals who are arrested, but who have not been arraigned or formally charged and who remain in custody of the arresting officers, while the Fourteenth Amendment protects those pre-trial detainees whose pretrial custody is ordered by a judicial officer. *Blake v. Base*, 90-CV-8, 1998 U.S. Dist.

LEXIS 14859, *37-40 (N.D.N.Y. Sept. 14, 1998).

In this case, plaintiff was a parolee, and had been placed in a room near his parole officer's office after being arrested for a parole violation. He had not been brought before a judge or had any administrative appearance on the alleged parole violations. Even though parolees are technically in the State's "legal custody",[3] the restrictions upon their movement are minimal,[4] and for purposes of the analysis in this case, this court finds that the same protections apply to this plaintiff regarding a claim of excessive force during or shortly after arrest as if he were a completely free citizen who was being arrested on criminal charges. Thus, the Fourth Amendment applies to protect plaintiff in this case.

The Supreme Court has stated that a use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. *Graham v. Connor*, 490 U.S. 386 (1989). Excessive force has been defined as more force than would have appeared to a reasonable officer in similar circumstances to be necessary to accomplish the lawful purpose intended. *Davis v. Rodriguez*, 364 F.3d 424 (2d Cir. 2004).

In this case, plaintiff alleges that the "second set" of handcuffs that defendant Rivera placed on plaintiff were too tight. Additionally, plaintiff alleges that he was

---

[3] *See Jacobs v. Ramirez*, 400 F.3d 105, 106 (2d Cir. 2005).

[4] *Id.* at 107.

11

forced to sit on the bench for three hours prior to being transported to the Justice Center. However, it is clear from the exhibits filed by defendant that plaintiff could *not* have been sitting on the bench for three hours. Plaintiff's booking began at 5:47 p.m. Plaintiff admitted during his deposition that he waited almost two hours after he arrived at the Justice Center for the booking to start. Defendant's Ex. 3 at 17; (T. at 36). Officer Knapp's affidavit states that the officers waited approximately one and one half hours. Knapp Aff. ¶ 5. Using Officer Knapp's estimate, which was less time than plaintiff's estimate, this would mean that plaintiff and the escorting officers arrived at the Justice Center shortly after 4:00 p.m. Since plaintiff stated that it took approximately ten minutes to get to the Justice Center from defendant Rivera's office, it seems clear that the group left defendant Rivera's office at approximately 4:00 p.m.

Plaintiff's own testimony is that he did not arrive for his parole reporting appointment until after three o'clock.[5] Defendant Rivera's notes indicate that plaintiff arrived for his weekly reporting appointment at 3:41 p.m. Based on the undisputed and documented facts, including plaintiff's own testimony, it is impossible for plaintiff to have spent three hours sitting on the bench. In fact, it appears that plaintiff may have only waited approximately twenty minutes or so from the time that he was "arrested" in defendant Rivera's office until he was escorted to the Justice Center.

---

[5] Plaintiff stated during his deposition, that he picked his wife up at three o'clock and they proceeded to defendant Rivera's office. Thus, plaintiff and his wife arrived at defendant's office after three.

12

The court would also point out that plaintiff specifically stated that the handcuffs that were allegedly too tight were the handcuffs that were attached to the bench, thus, the relevant time period was only the time that plaintiff sat on the bench prior to his trip to the Justice Center. Twenty minutes or even half an hour does not appear to be an objectively unreasonable time to keep plaintiff waiting, even if as plaintiff states, the handcuffs were "too tight." The court also notes that defendant Rivera states that a "second set" of handcuffs were not placed on plaintiff's wrists, rather the bench handcuffs were used by attaching one cuff to the chain that extended between the handcuffs that were already on plaintiff's wrists.

Courts have held that the right to make an arrest carries with it the right to use "some degree of physical coercion." *Esmont v. City of New York*, 371 F. Supp.2d 202, 214 (E.D.N.Y. 2005)(citing *Graham*, 490 U.S. at 396). As the court stated in *Esmont*, frequently, a reasonable arrest involves handcuffing the arrestee, tightly enough to prevent the arrestee's hands from slipping out. *Id.* (citation omitted). Some courts have held that placing handcuffs on so tightly as to cause nerve damage may constitute excessive force within the meaning of the Fourth Amendment. *Id.* (citations omitted). However, in making this determination, the court must also consider whether the handcuffs were unreasonably tight, whether the defendant ignored plaintiff's pleas that the handcuffs were too tight, and the injury to the wrist. *Id.*

As stated above, the "tight" handcuffs could only have been on plaintiff for

13

approximately twenty minutes. Although plaintiff states that he "hollered" for Rivera to loosen the handcuffs, Rivera states that plaintiff never complained about the handcuffs, and Officer Knapp states that plaintiff *never complained* about the tightness of the handcuffs. In fact, the videotape of the booking procedure confirms this fact. Plaintiff was specifically asked by the officer whether he was injured, and plaintiff responded that he was *not* injured. The officer also asked plaintiff if he was taking any medications, and plaintiff indicated he was taking both penicillin and Ibuprofen *for his tooth*. After the officer removed the handcuffs, plaintiff had no trouble moving either arm, and appeared to have no trouble removing his jacket or performing any of the movements that the officer required.

Plaintiff was examined by Nurse Ruggireo early in the morning, the day after he was admitted to the Justice Center. Contrary to plaintiff's allegations, Nurse Ruggireo's records show that plaintiff *never complained* about his wrist or his arm, and the nurse confirmed that the reason plaintiff was given pain and antibiotic medication was for an abscessed *tooth*. The nurse's affidavit states that if plaintiff had complained about swelling or pain in his arm, wrist, or shoulder, *she would have noted it* in the records.

Additionally, although plaintiff states that he was immediately referred to be x-rayed, this is *not* in the medical records. In fact, the medical records do show that plaintiff complained of right shoulder pain on November 24, 2002 and on December

14

18, 2002, but on December 23, 2002 he stated that his right shoulder pain was caused by "lifting weights" about *four weeks before*. Defendant's Ex. 4 at 8. Plaintiff may have subsequently injured his right arm and shoulder, but there is absolutely no evidence that this injury was from tight handcuffs. There was clearly *no injury* to plaintiff from the handcuffs noted in the record. Thus, the injury was *de minimus* at best, and more than likely, non-existent.

Although plaintiff alleges that he called to defendant Rivera to loosen the cuffs, plaintiff never complained thereafter to *any* of the people that he saw, either that day, or the day after when he was examined by the nurse. This fact, together with the fact that plaintiff could not have had the allegedly "tight" handcuffs on for more than twenty minutes, leads the court to conclude that there are no issues of material fact, and defendant may be granted judgment as a matter of law. Plaintiff's allegations do not rise to the level of a constitutional violation.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendant's motion for summary judgment (Dkt. No. 32) be **GRANTED** and the complaint **DISMISSED IN ITS ENTIRETY.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: August 31, 2005

                                              Hon. Gustave J. DiBianco
                                              U.S. Magistrate Judge

Case 9:03-cv-00500-LEK-GJD   Document 37   Filed 08/31/05   Page 16 of 16